IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GWENDOLYN M.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-606-SMY |
| | ) |
| ANDREW SAUL, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Gwendolyn M. seeks judicial review of the final agency decision denying her applications for Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for SSI in February 2017, alleging an amended disability onset date of February 16, 2017 (Tr. 40, 200-05). Her claims were denied initially on June 2, 2017, and on reconsideration on August 2, 2017 (Tr. 106-15, 121-27). She requested a hearing on September 8, 2017 (Tr. 20).

An Administrative Law Judge ("ALJ") denied Plaintiff's application on March 6, 2019, following an evidentiary hearing (Tr. 20-31). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely Complaint with this Court.

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.

**Issues Raised by Plaintiff**

Plaintiff raises the following issues for judicial review:

1. The ALJ's three conflicting exertional work findings are erroneous.

2. The ALJ erred in assessing Plaintiff's mental capacity.

3. The ALJ failed to support the mental capacity finding.

4. The ALJ failed to properly evaluate Plaintiff's symptoms.

**Legal Standard**

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## Decision of the ALJ

The ALJ followed the five-step analytical framework with respect to Plaintiff's application. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He then found that she suffered from the following severe impairments since the alleged onset date of disability: cervical disorder; status-post hernia repair in June 2016; obesity; major depressive disorder. The ALJ considered Plaintiff's obesity in evaluating her residual functional capacity ("RFC") and determined that, due to her obesity, she was limited to performing sedentary work (Tr. 26). The ALJ also found that "[w]hile the [Plaintiff] does have some impairments, the actual objective findings on examination do not reflect functional limitations that would preclude light exertion" (Tr. 30).

The ALJ determined that Plaintiff had the RFC to do the following:

> Perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). She can lift and carry 50 pounds occasionally and 25 pounds frequently. She can sit, stand, or walk about 6 hours each in an 8-hour workday with normal breaks. The claimant can frequently push and pull with her bilateral upper extremities. She can frequently climb ramps or stairs, but never ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch, or crawl. She can occasionally reach overhead with her bilateral upper extremities. The claimant can understand, remember, and carry out simple instructions. She can respond appropriately to supervision and co-workers. She can occasionally interact with the public. She can deal with changes in a routine work setting.

The ALJ ultimately concluded that Plaintiff was not disabled because she was capable of making a successful adjustment to other work that exists in significant numbers in the national economy such as dishwasher, order picker, and laundry worker, based on the testimony of a vocational expert ("VE").

**The Evidentiary Record**

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

1. **Agency Forms**

Plaintiff was born in 1975 and was 41 years old on the alleged onset date of February 16, 2017 (Tr. 321-322). In her application for disability benefits, Plaintiff listed the following conditions as limiting her ability to work: cervicalgia, dorsalagia, positive SLR on the right, bipolar disorder, anxiety, and depression. *Id*.

2. **Evidentiary Hearing**

Plaintiff was represented by counsel at her hearing on November 7, 2018 (Tr. 38) and testified to the following: Plaintiff is 5'7 and weighs 220 pounds. *Id*. at 42. She is unable to work because she cannot be around people. *Id*. at 43. Plaintiff suffers from depression, thoughts of suicide, difficulty sleeping, hallucinations, and nervousness around crowds of people. *Id*. at 44-

47). She has had panic attacks twice a week since being diagnosed at 13 years old (Tr. 43). After a panic attack, she feels tired and drained. *Id.* at 44. Plaintiff sees a counselor every two weeks and sees a psychiatrist once a month. *Id*. at 51-52. She struggled with her mental problems despite medication and counseling. *Id.* at 43-44, 51-52.

Plaintiff has arthritis in her back and muscle spasms (Tr. 47). Her pain medication, Tramadol, made her sleepy and drowsy. *Id*. at 48. Plaintiff's treating physician assistant, Haley Kostecki, limited her to lifting no more than 8 to 10 pounds. *Id*. Her activities included straightening her house, watching television, reading, and going to the grocery store once or twice a month. *Id*. at 49-50. Plaintiff relied on her boyfriend to remind her about her medication and to help with tasks like shopping. *Id.* at 49, 50-51.

A vocational expert ("VE") testified at the hearing (Tr. 53-57). The ALJ posed hypothetical questions to the expert that corresponded to the ultimate RFC findings. *Id*. The VE testified that such an individual could work as a dishwasher, order picker, and laundry worker. If reduced to light work, the person could perform work as a mail clerk and routing clerk. *Id.* at 56. If the person could not respond appropriately to supervisors, coworkers, or usual work situations, there would be no jobs. *Id.* The person could be off task a maximum of ten percent of the time. *Id.* at 57.

3. **Relevant Medical Records**

Plaintiff began treating with Nelson Wong, M.D. in July 2015, at which time he prescribed Zoloft (Tr. 324-350). No complaints or exam findings suggesting mental impairment are noted in the medical records for Dr. Wong's treatment of Plaintiff. *Id.*

Plaintiff reported complaints of upper back and neck pain. Imaging from July 2016 showed a small disc osteophyte at C5-C6 with straightening of the cervical spine (Tr. 342). In January

2017, Dr. Wong noted Plaintiff's back and neck pain, which were aggravated by standing and sitting (Tr. 324). She was prescribed muscle relaxants. Dr. Wong reported neck spasms with limited range of motion and a body mass index of 35.43 (Tr. 325-326). In May 2017, Plaintiff reported back and neck pain aggravated by lifting and standing and relieved with rest. *Id*. at 373. Dr. Wong noted muscled spasms and limited motion. *Id*. at 375. Dr. Wong referred Plaintiff to physical therapist Gordon Holden, noting that her symptoms were consistent with cervical degenerative disc disease. *Id*. at 377-378.

In June 2017, Plaintiff began treatment with Physician Assistant (PA) Haley Kostecki, who noted her complaints of worsening back pain and lower extremity edema (Tr. 411-12). Plaintiff had muscle spasms, limited neck motion, and tenderness to palpation (Tr. 414). PA Kostecki prescribed Cyclobenzaprine and Meloxicam for Plaintiff's back pain (Tr. 414). She also prescribed hydrochlorothiazide for Plaintiff's edema and referred her to counseling and psychiatry (Tr. 414). During a follow-up visit, PA Kostecki noted that Plaintiff was on a waiting list for psychiatry, and prescribed Sertraline and Trazodone (Tr. 411). She referred Plaintiff for further evaluation of a thoracic mass seen on imaging. *Id.* Treatment records reflect that Plaintiff continued to report back pain and muscle spasms despite the medication. *Id.* at 398-417.

Plaintiff had an initial psychiatric examination with Mitchell Halper, M.D., beginning in July 2017 (Tr. 481). She reported that her depression was getting worse and that she had been off her medication for quite a long time. She also reported experiencing racing thoughts, anxiety, panic attacks, sleep problems, and feelings of isolation. *Id*. Dr. Halper increased Plaintiff's Zoloft and added Trazodone. *Id.* at 482. By November 2017, Plaintiff began reporting hearing voices and having paranoid thoughts. *Id*. at 478. Dr. Halper added Abilify to Plaintiff's medications. *Id.* In February 2018, Plaintiff reported feeling less suicidal, but stated she still periodically heard

voices (Tr. 475). In April 2018, she felt her condition was improving, but months later, again had increased depression with tearfulness, halting speech, and poor judgement (Tr. 473, 470). Dr. Halper again adjusted her medication (Tr. 470)

Plaintiff began counseling with Angela Bergeron, M.S. in July 2017. Bergeron completed a medical statement for Plaintiff and noted that Plaintiff suffers from Major Depressive Disorder with Bipolar depression, personality issues, panic attacks, and obsessive-compulsive problems (Tr. 518-19). Bergeron opined that Plaintiff had marked limitations in activities of daily living, extreme difficulty in maintaining social functioning, and repeated episodes of decompensation or deterioration in work or work like settings which cause the patient to withdraw from the situation or experience exacerbation of signs and symptoms (Tr. 519-520).

4. **State Agency Consultants' Opinions**

James Peterson, Ph.D. examined Plaintiff in May 2017 (Tr. 357-359). Plaintiff stated that she has been chronically depressed, which has been aggravated by physical complications. *Id*. She reported experiencing panic symptoms, being uncomfortable in most places, becoming shaky, crying for no reason, having difficulty breathing, being self-conscious, and wanting to leave the area. (Tr. 358-359). She also reported poor sleep, trouble with her appetite, and isolation. *Id*. Dr. Peterson opined that Plaintiff had persistent depressive disorder. *Id.*

In May 2017, Adrian Feinerman, M.D. reviewed Plaintiff's medical records and conducted a physical examination (Tr. 362-371). His diagnostic impression was that Plaintiff was a normal female and that she could sit, stand, walk, hear, speak, lift, carry, handle objects, and handle funds on her own behalf. *Id*. at 368.

On May 17, 2017, Howard Tin, Psy.D reviewed the evidence and opined that Plaintiff could perform one to two step tasks (Tr. 68-70). He noted that she had difficulty with maintaining

attention and concentration for extended periods but could perform simple tasks. He opined that Plaintiff had difficulty interacting appropriately with the general public and did not handle stress or changes in routine well. *Id*. This opinion was affirmed by Thomas Low, Ph.D. in July 2017 (Tr. 86, 90-92.)

Frank Mikell, M.D. reviewed Plaintiff's file in May 2017 and concluded that she could perform medium work with frequent pushing and pulling, frequent climbing ramps and stairs, no climbing ladders/ropes/scaffolds; occasional overhead reaching, and frequent stooping, kneeling, crouching, and crawling (Tr. 66-68). James Hinchen, M.D. also reviewed Plaintiff's file in July 2017 and concurred with Dr. Mikell's assessment (Tr. 88-89).

## Discussion

Plaintiff asserts that the ALJ failed to include a limitation to one and two-step tasks in his RFC determination and his questions posed to the VE. State agency consultants Dr. Tin and Dr. Law opined that Plaintiff had mild to moderate limitations and that she could perform simple, one and two-step tasks. The ALJ assigned "significant" weight to the consultants' opinions but did not include a one and two-step task limitation in his ultimate RFC determination; instead, limiting Plaintiff to understanding, remembering, and carrying out "simple instructions."

Although the Seventh Circuit has not addressed the issue, several district courts in this circuit have concluded that there is a significant difference between a limitation to one and two-step tasks and simple, routine, repetitive tasks. *See Michael S. v. Saul*, 2020 WL 4052903, at *4 (N.D. Ill. July 20, 2020) (collecting cases). Here, the ALJ did not explain his decision to omit the one and two-step limitation, even though he gave significant weight to the findings of the state agency consultants who articulated the limitation.

An ALJ does not need to address every piece of evidence in the record or provide an explanation for every limitation he chooses to adopt. *See Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). But the ALJ must explain why he excluded some of the limitations included in the opinion so that the Court can meaningfully review that decision. In this case, it is unclear whether the ALJ considered and dismissed or completely failed to consider this pertinent evidence.

Additionally, the ALJ's opinion creates ambiguity surrounding three inconsistent functional exertional limits. Specifically, the ALJ found: (1) "The undersigned has given due consideration to [Plaintiff's] obesity in assessing [her] residual functional capacity and, in this case, limiting [Plaintiff] to the performance of sedentary work" (Tr. 26); (2) "While [Plaintiff] does have some impairments, the actual objective findings on examination do not reflect functional limitations that would preclude light exertion" (Tr. 30); and (3) Plaintiff was capable of performing medium work in the RFC. The Commissioner maintains that these inconsistencies are mere typographical errors and that the ALJ intended to limit Plaintiff to medium work only. However, that conclusion is not evident from the opinion, and the Court cannot speculate that these inconsistent statements are simply typographical errors. *See Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014) (rejecting argument by the Commissioner's attorney to overlook the ALJ's misstatement as scrivener's error). Moreover, these inconsistent functional capacity findings are not harmless error, given that the ALJ only found a significant number of jobs at the medium level.

For the foregoing reasons, remand is appropriate in this case for the ALJ to clarify the task-based restriction he intended to adopt and to address the inconsistent functional capacity findings. Because the Court has determined that remand is necessary, it need not address Plaintiff's remaining arguments. Plaintiff may raise those issues directly with the ALJ on remand.

This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff is disabled or that she should be awarded benefits. The Court has not formed

any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

After careful review of the record, the Court finds that the ALJ committed errors of law. Therefore, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED:  April 4, 2022**

**STACI M. YANDLE**
**United States District Judge**